# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 20- 181 |
|---|---|---|
| v. | : | DATE FILED: May 29, 2020 |
| DANIEL D'AMBROSIA | : | VIOLATIONS: |
|  |  | 18 U.S.C. § 1343 (wire fraud – 5 counts) |
|  | : | 18 U.S.C. § 152 (bankruptcy fraud – 2 counts) |
|  | : | 18 U.S.C. § 2 (aiding and abetting) |
|  |  | Notice of forfeiture |

## INFORMATION

### COUNT ONE

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times relevant to this Information:

1. Defendant DANIEL D'AMBROSIA was a resident of the Eastern District of Pennsylvania.

2. Defendant DANIEL D'AMBROSIA was the owner and principal of Danco Painting, LLC ("Danco"), a company registered to do business in Pennsylvania. Danco operated as a commercial painting company with an office in New Jersey and customers in New Jersey and Pennsylvania.

3. Defendant DANIEL D'AMBROSIA was an owner and principal of Jardel Construction and Consulting, LLC ("Jardel"), a commercial painting company registered to do business in Pennsylvania.

4. Bank of America, N.A. ("Bank of America"), was a financial institution that held deposits in accounts for individuals and business customers in bank accounts that could be accessed over the internet.

5. Republic Bank and Trust Company ("Republic Bank") was a financial institution that held deposits in accounts for individuals and business customers in bank accounts that could be accessed over the internet.

6. PNC Bank ("PNC") was a financial institution that held deposits in accounts for individuals and business customers in bank accounts that could be accessed over the internet.

7. Wells Fargo Bank, N.A. ("Wells Fargo") was a financial institution that held deposits in accounts for individuals and business customers in bank accounts that could be accessed over the internet.

8. Conestoga Bank ("Conestoga"), which was later acquired by Beneficial Bancorp, Inc., which later merged into WSFS Bank, was a financial institution that held deposits in accounts for individuals and business customers in bank accounts that could be accessed over the internet.

9. Defendant DANIEL D'AMBROSIA controlled multiple bank accounts at Bank of America, Republic, PNC, Wells Fargo, and Conestoga, some of which were personal accounts and some of which were business accounts for Danco or Jardel.

10. Bank of America's internet servers were located in Virginia and Texas, and it maintained a daily ledger for the Danco account in Pennsylvania.

11. In or about 2014, defendant DANIEL D'AMBROSIA caused Danco to file tax returns with the IRS for tax year 2013, in which Danco reported receiving approximately $1,005,856 in gross receipts and approximately $137,508 in assets.

12. In or about 2015, defendant DANIEL D'AMBROSIA caused Danco to file tax returns with the IRS for tax year 2014, in which Danco reported receiving approximately $695,487 in gross receipts and approximately $145,774 in assets.

13. As principal of Jardel, defendant DANIEL D'AMBROSIA directed Jardel to apply for extensions of time in which to file tax returns with the IRS, but Jardel never filed any tax returns with the IRS.

14. Merchant Cash and Capital, based in New York State, issued loans to businesses over the internet.

15. From at least in or about May 13, 2015, through at least in or about November 2015, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

## DANIEL D'AMBROSIA

knowingly devised and executed and willfully caused the execution of a scheme to defraud Merchant Cash and Capital by means of false and fraudulent pretenses, representations and promises.

## THE SCHEME

It was part of the scheme that:

16. In or about May 2015, defendant DANIEL D'AMBROSIA, on behalf of Danco, applied to Merchant Cash and Capital for a merchant loan for "payroll" and "material."

17. In the application, defendant DANIEL D'AMBROSIA intentionally made false representations about Danco's gross receipts and assets in order to create the appearance that Danco could repay the loan.

18. Merchant Cash and Capital, relying on defendant DANIEL D'AMBROSIA's misrepresentations, loaned Danco approximately $95,000 in return for future receipts totaling $121,285.

19. Defendant DANIEL D'AMBROSIA caused Danco to repay only approximately $14,083 to Merchant Cash and Capital, resulting in a default of approximately $107,202.

20. Defendant DANIEL D'AMBROSIA caused Danco to transfer the remaining money Danco received from the Merchant Cash and Capital into one of his accounts at Conestoga Bank, which defendant D'AMBROSIA used to pay for personal expenses, including $3,000 to a plastic surgeon, $100,000 to a personal investment account, mortgage payments, car payments, insurance premiums, and a hotel in Kissimmee, Florida.

**MANNER AND MEANS**

It was part of the scheme that:

21. On or about May 13, 2015, defendant DANIEL D'AMBROSIA, on behalf of Danco, filled out and signed an application for a loan, which he caused to be transmitted to Merchant Cash and Capital.

22. In the application, defendant DANIEL D'AMBROSIA falsely represented that Danco had gross monthly receipts of $300,000, which translates to gross annual receipts of $3.6 million, even though Danco's tax returns for tax years 2013 and 2014 had reported gross receipts of $1,005,856 and $695,487 in those respective years.

23. Defendant DANIEL D'AMBROSIA also falsely represented that Danco had assets of approximately $1 million even though Danco's tax returns for tax years 2013 and 2014 had reported assets of less than $150,000 in both years. Defendant D'AMBROSIA also falsely represented that Danco would use the loan proceeds to pay for "payroll + material."

24. Defendant DANIEL D'AMBROSIA subsequently transmitted to Merchant Cash and Capital bank statements for a Danco account at Bank of America, which purported to show hundreds of thousands of dollars being deposited into a Danco bank account every month. In reality, defendant D'AMBROSIA had created the illusion of substantial cash flow by moving large sums of money among the various accounts under his control for no purpose relating to the painting business.

25. On or about May 29, 2015, for the purpose of executing the scheme described above, defendant DANIEL D'AMBROSIA knowingly and willfully caused to be transmitted by means of wire communication in interstate commerce instructions from Merchant Cash and Capital in New York State to Bank of America in Pennsylvania, through servers located in Virginia and Texas, to transfer $95,000 in funds from a Merchant Cash and Capital account into a Danco account.

All in violation of Title 18, United States Code, Sections 1343 and 2(b).

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1-13 of Count One of this Information are re-alleged here.

2. World Global Financing, based in Florida, issued loans to businesses over the internet.

3. From at least on or about May 26, 2015, through at least in or about July 2015, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DANIEL D'AMBROSIA**

knowingly devised and executed and willfully caused the execution of a scheme to defraud World Global Financing by means of false and fraudulent pretenses, representations and promises.

## THE SCHEME

It was part of the scheme that:

4. In or about May 2015, defendant DANIEL D'AMBROSIA, on behalf of Danco, applied to World Global Financing for a merchant loan for "payroll" and "materials."

5. In the application, defendant DANIEL D'AMBROSIA intentionally made false representations about Danco's gross receipts in order to create the appearance that Danco could repay the loan.

6. World Global Financing relied on defendant DANIEL D'AMBROSIA's misrepresentations and loaned Danco approximately $48,500 in return for future receipts totaling $69,000.

7. Defendant DANIEL D'AMBROSIA caused Danco to repay only approximately $8,200 to World Global Financing, resulting in a default of approximately $60,780.

8. Defendant DANIEL D'AMBROSIA caused Danco to transfer the remaining money Danco received from the World Global Financing into one of his accounts at Conestoga Bank, which defendant D'AMBROSIA used to pay for personal expenses, including $3,000 to a plastic surgeon, $100,000 to a personal investment account, mortgage payments, car payments, insurance premiums, and a hotel in Kissimmee, Florida.

## MANNER AND MEANS

It was part of the scheme that:

9. On or about May 27, 2015, defendant DANIEL D'AMBROSIA, on behalf of Danco, filled out and signed an application for a loan, which he caused to be transmitted to World Global Financing.

10. In the application, defendant DANIEL D'AMBROSIA falsely represented that Danco had gross monthly receipts of $300,000, which translates to gross annual receipts of $3.6 million, even though Danco's tax returns for tax years 2013 and 2014 had reported gross receipts of $1,005,856 and $695,487 in those respective years.

11. Defendant DANIEL D'AMBROSIA subsequently transmitted to World Global Financing bank statements for a Danco account at Bank of America, which purported to show hundreds of thousands of dollars being deposited into a Danco bank account every month. In reality, defendant D'AMBROSIA had created the illusion of substantial cash flow by moving large sums of money between and among the various accounts under his control for no purpose relating to the painting business.

12. On or about May 29, 2015, for the purpose of executing the scheme described above, defendant DANIEL D'AMBROSIA knowingly and willfully caused to be transmitted by means of wire communication in interstate commerce instructions from World Global Financing in Florida to Bank of America in Pennsylvania, through servers located in Virginia and Texas, to transfer $48,000 in funds from a World Global Financing account into a Danco account.

All in violation of Title 18, United States Code, Sections 1343 and 2(b).

## COUNT THREE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1-13 of Count One of this Information are re-alleged here.

2. Power Up Lending ("Power Up"), based in New York, issued loans to businesses over the internet.

3. From at least on or about May 5, 2015, through at least on or about June 3, 2015, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DANIEL D'AMBROSIA**

knowingly devised and executed and willfully caused the execution of a scheme to defraud Power Up by means of false and fraudulent pretenses, representations and promises.

## THE SCHEME

It was part of the scheme that:

4. In or about May 2015, defendant DANIEL D'AMBROSIA, on behalf of Danco, applied to Power Up for a merchant loan.

5. In the application, defendant DANIEL D'AMBROSIA intentionally made false representations about why Danco was seeking the loan. More specifically, defendant D'AMBROSIA represented that Danco would use the loan for "Material-Painting."

6. In actuality, defendant DANIEL D'AMBROSIA intended to convert the loan proceeds for his personal use, not for painting materials for Danco.

7. Power Up relied on defendant DANIEL D'AMBROSIA's misrepresentations and loaned Danco approximately $73,505 in return for a share of future receipts totaling $97,500.

8. Defendant DANIEL D'AMBROSIA caused Danco to repay only approximately $6,500 to Power Up, resulting in a default of approximately $91,005.

9. Between on or about June 1, 2015 and on or about June 3, 2015, defendant DANIEL D'AMBROSIA caused Danco to transfer the remaining money Danco received from the Power Up, into one of his personal accounts at Conestoga Bank, which defendant D'AMBROSIA used to pay for personal expenses, including $3,000 to a plastic surgeon, $100,000 to a personal investment account, mortgage payments, car payments, insurance premiums, and a hotel in Kissimmee, Florida.

## MANNER AND MEANS

It was part of the scheme that:

10. On or about May 5, 2015, defendant DANIEL D'AMBROSIA, on behalf of Danco, submitted a loan application to a loan broker, which ultimately forwarded the application to Power Up.

11. In the application, defendant DANIEL D'AMBROSIA falsely represented that Danco would use the loan proceeds to pay for painting materials.

12. On or about May 29, 2015, defendant DANIEL D'AMBROSIA faxed the loan application from Pennsylvania to New York.

13. On or about June 1, 2015, for the purpose of executing the scheme described above, defendant DANIEL D'AMBROSIA knowingly and willfully caused to be transmitted by means of wire communication in interstate commerce instructions from Power Up in New York, to Bank of America in Pennsylvania, through servers located in Virginia and Texas, to transfer approximately $73,505 in funds from a Power Up account into a Danco account.

All in violation of Title 18, United States Code, Sections 1343 and 2(b).

## COUNT FOUR

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

    1.    Paragraphs 1-13 of Count One of this Information are re-alleged here.

    2.    Empower Group, based in New York, issued loans to businesses over the internet.

    3.    In or about July 2015, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### DANIEL D'AMBROSIA

knowingly devised and executed and caused the execution of a scheme to defraud Empower Group by means of false and fraudulent pretenses, representations and promises.

### THE SCHEME

It was part of the scheme that:

    4.    On or about July 29, 2015, defendant DANIEL D'AMBROSIA, on behalf of Jardel, applied to Empower Group for a merchant loan of $50,000 for "payroll."

    5.    In the application, defendant DANIEL D'AMBROSIA intentionally made false representations about Jardel's gross receipts and assets in order to create the appearance that Jardel could repay the loan.

    6.    The scheme was not successful as Empower Group did not fund the loan.

### MANNER AND MEANS

It was part of the scheme that:

    7.    On or about July 29, 2015, defendant DANIEL D'AMBROSIA, on behalf of Jardel, filled out and signed an application for a loan, which he caused to be transmitted to Empower Group.

8. In the application, defendant DANIEL D'AMBROSIA falsely represented that Jardel had gross monthly receipts of $200,000, which translates to gross annual receipts of $2.4 million, even though defendant D'AMBROSIA later told an IRS agent that Jardel had total gross annual receipts of $200,000, not $200,000 per month.

9. On or about July 29, 2015, for the purpose of executing the scheme described above, defendant DANIEL D'AMBROSIA knowingly and willfully caused to be transmitted by means of wire communication in interstate commerce a loan application for Jardel from Pennsylvania to Empower Group in New York.

All in violation of Title 18, United States Code, Sections 1343 and 2(b).

## COUNT FIVE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1-13 of Count One of this Information are re-alleged here.

2. RapidAdvance, now known as Small Business Financial Services ("RapidAdvance"), was a Delaware company based in Maryland, which issued loans to businesses over the internet.

3. In or about November 2015, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

## DANIEL D'AMBROSIA

knowingly devised and executed and willfully caused the execution of a scheme to defraud RapidAdvance by means of false and fraudulent pretenses, representations and promises.

## THE SCHEME

It was part of the scheme that:

4. In or about November 2015, defendant DANIEL D'AMBROSIA, on behalf of Jardel, applied to RapidAdvance for a merchant loan.

5. In the application, defendant DANIEL D'AMBROSIA intentionally made false representations about Jardel's gross receipts in order to create the appearance that Jardel could repay the loan.

6. RapidAdvance relied on defendant DANIEL D'AMBROSIA's misrepresentations and loaned Jardel approximately $47,775 in return for an interest in future receipts totaling $57,820.

7. Defendant DANIEL D'AMBROSIA caused Jardel to repay only approximately $13,170 to RapidAdvance, resulting in a default of approximately $44,650.

8. Defendant DANIEL D'AMBROSIA caused Jardel to transfer the remaining money Jardel received from RapidAdvance into one of his personal accounts, and defendant D'AMBROSIA then used the funds for personal expenditures unrelated to Jardel or the painting business.

## MANNER AND MEANS

It was part of the scheme that:

9. On or about November 3, 2015, defendant DANIEL D'AMBROSIA, on behalf of Jardel, filled out and signed an application for a loan, which he caused to be transmitted to RapidAdvance.

10. In the application, defendant DANIEL D'AMBROSIA falsely represented that Jardel had gross monthly receipts of $200,000, which translates to gross annual receipts of $2.4 million, even though defendant D'AMBROSIA later told an IRS agent that Jardel only generated $200,000 in total annual receipts, not $200,000 per month.

11. On or about November 9, 2015, for the purpose of executing the scheme described above, defendant DANIEL D'AMBROSIA knowingly and willfully caused to be transmitted by means of wire communication in interstate commerce instructions from RapidAdvance in Maryland, to Bank of America, through servers located in Virginia and Texas, to transfer approximately $47,775 in funds from a RapidAdvance account at Wells Fargo Bank into a Jardel account at Bank of America.

All in violation of Title 18, United States Code, Sections 1343 and 2(b).

## COUNT SIX

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. From on or about June 26, 2018, until the present, in the Eastern District of Pennsylvania and elsewhere, defendant

**DANIEL D'AMBROSIA**

knowingly and fraudulently concealed from creditors, the United States Trustee, and others, in connection with a case under Title 11, In Re Daniel D'Ambrosia, Bankruptcy Case No. 18-14238, property belonging to the estate of a debtor, that is: the approximately $270,000 in funds that defendant D'AMBROSIA had placed in an investment account that defendant D'AMBROSIA opened in the name of his minor son as a Uniform Transfers to Minors Act account until his son turned 21 years of age, which defendant D'AMBROSIA was required to identify to the Bankruptcy Trustee on Schedule I and his Statement of Financial Affairs.

All in violation of Title 18, United States Code, Section 152(1).

## COUNT SEVEN

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. On or about October 19, 2018, in the Eastern District of Pennsylvania, defendant

### DANIEL D'AMBROSIA

knowingly and fraudulently made a material false declaration, in and in relation to a case under Title 11, In Re Daniel D'Ambrosia, Bankruptcy Case No. 18-14238, by stating under oath at a Meeting of Creditors that he had not transferred, sold, and given away any property in the past four years before filing his bankruptcy petition on June 26, 2018, when, as the defendant well knew, he had transferred approximately $270,000 from a personal investment account in his name into an investment account that defendant D'AMBROSIA controlled which defendant D'AMBROSIA opened in the name of his minor son as a Uniform Transfers to Minors Act account until his son turned 21 years of age.

All in violation of Title 18, United States Code, Section 152(3).

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Sections 1343, set forth in this information, defendant

### DANIEL D'AMBROSIA

shall forfeit to the United States of America, any property, which constitutes or is derived from proceeds obtained directly or indirectly as the result of such offenses, including, but not limited to up to the sum of $224,801.78 in United States currency.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(2).

_Ronald Barack for_

**WILLIAM M. McSWAIN**
**United States Attorney**